QUAKER CITY HEATING AND AIR CONDITIONING CO., INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Quaker City Heating & Air Conditioning Co. v. Commissioner
Docket No. 425-77.
United States Tax Court
T.C. Memo 1979-106; 1979 Tax Ct. Memo LEXIS 417; 38 T.C.M. (CCH) 494; T.C.M. (RIA) 79106; March 26, 1979, Filed *417 Frank Giunta (an officer), for the petitioner. Edward I. Foster, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioner's income tax for its fiscal years ending May 31, 1972 and May 31, 1973 in the amounts of $13,920.83 and $10,406.35, respectively, and addition to tax under section 6653(a), I.R.C. 1954, [1] in the respective amounts of $696.04 and $520.32. The issues for our decision are: (1) Whether petitioner is entitled to deductions in each of the years here in issue for commissions expenses and advertising expenses in excess of the amounts allowed by respondent in the notice of deficiency; and (2) whether respondent's adjustments to gross receipts and purchases for petitioner's fiscal year ending May 31, 1972 and determination of addition to tax under section 6653(a) are correct. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Quaker City Heating and Air Contitioning Co., Inc. *418 (petitioner) was a Pennsylvania corporation during the years here in issue. At the time of the filing of the petition in this case, its principal office was in Philadelphia, Pennsylvania. It filed corporate income tax returns for its fiscal years ending May 31, 1972 and May 31, 1973 with the Philadelphia Service Center on November 10, 1972 and October 9, 1973, respectively. Each of these returns was prepared by an accountant, Enrico Nardini, who was retained by petitioner on a regular basis to keep its books and prepare any returns petitioner was required to file, including its Federal income tax returns. Sometime in the latter part of 1972, petitioner's president, Frank Giunta, became aware that petitioner's accountant, Mr. Nardini, was appropriating petitioner's funds for his own use. When Mr. Giunta confronted Mr. Nardini with this fact, Mr. Nardini admitted that he had been taking petitioner's funds for his own use and agreed to reimburse petitioner for the funds he had taken. Mr. Giunta, on the basis of this understanding, decided to keep Mr. Nardini as the accountant for petitioner. Mr. Nardini served as petitioner's accountant until after petitioner's corporate income *419 tax return for its fiscal year ending May 31, 1973 was filed. In the latter part of 1973 Mr. Giunta terminated Mr. Nardini's services to petitioner because of his belief that Mr. Nardini had appropriated other funds of petitioner. Petitioner then obtained the services of an accountant, Gilbert Brown. Mr. Brown is a certified public accountant. Sometime in the summer of 1974, petitioner's income tax return for its fiscal year ending May 31, 1972 was assigned to Internal Revenue Agent Marc S. Klebanoff for investigation. Mr. Klebanoff initially contacted petitioner's president, Mr. Giunta, during August 1974 with a view to setting a date to begin his audit. Mr. Giunta advised Mr. Klebanoff that Mr. Gilbert Brown, a certified public accountant, would contact him to arrange for an appointment. Beginning in late August and continuing off and on until May 1975, Revenue Agent Klebanoff contacted Mr. Brown to arrange an agreeable date for the audit. He was consistently informed by Mr. Brown that Mr. Nardini had the books and records of petitioner. On each of the occasions he was contacted by the revenue agent, Mr. Brown stated that he was attempting to get the books from Mr. Nardini. *420 Sometime in the latter half of March 1975, Mr. Brown stated to the revenue agent that Mr. Nardini had agreed to turn over petitioner's books to Mr. Brown and that these books would be available for a meeting on May 19, 1975. Revenue Agent Klebanoff met with Mr. Brown on May 19, 1975, and began his audit of petitioner's return for its fiscal year 1972. Sometime prior to this May meeting, Revenue Agent Klebanoff had been assigned petitioner's return for its fiscal year 1973 for investigation. On May 19, 1975, the cash receipts book of petitioner for its fiscal year 1972 was provided to Revenue Agent Klebanoff. This cash receipts book showed the following gross receipts: Service
$203,632
Heating
62,167
Air Conditioning
21,085
Home Improvements
8,669
Total
$295,553
Also on May 19, petitioner's ledger for its fiscal year 1972 was provided to Revenue Agent Klebanoff. The ledger indicated the following for petitioner's fiscal year ending May 31, 1972: Total Bank Deposits
$319,413.00
Less: Loans (Note:IVB)
5,000.00
Exchanges
5,727.00
Insurance Re-
imbursement
910.38
Transfer
12,045.17
Net Deposits
$295,730.45
The cash discursements *421 book of petitioner which was provided to the revenue agent on May 19, 1975 contained the following entries: Check
Check
No.
Date
Payee
Amount
3588
12/9/71
Cash
$1,200
3618
12/16/71
Cash
1,800
This book also showed payments of subcontracting fees of $83,715.60 for petitioner's fiscal year ending May 31, 1972. The cash disbursements book furnished to Revenue Agent Klebanoff on May 19, 1975 was missing entries pertaining to advertising expense for the month of May 1972, but indicated disbursements for this expense for the other 11 months of petitioner's fiscal year 1972 of $12,059.53. The only advertising invoices provided to Revenue Agent Klebanoff on May 19, 1975 were the following: Pay Date
Check No.
Payee
Amount
2/18/72
3918
Bofinger & Kaplan
$6,073
3/24/72
4084
Bofinger & Kaplan
3,093
4/25/72
4204
Bofinger & Kaplan
1,194
5/30/73
Bofinger & Kaplan
3,070
The cash disbursements book of petitioner provided to Revenue Agent Klebanoff showed commissions expense of $8,411 for the fiscal year ending May 31, 1972. No cash receipts books, ledgers or cash disbursements books were furnished to Revenue Agent *422 Klebanoff for petitioner's fiscal year 1973. After Revenue Agent Klebanoff's telephone conversation with petitioner's president, Mr. Giunta, he did not again meet with or talk to Mr. Giunta until sometime between March 9 and March 23, 1976. Revenue Agent Klebanoff had closed the case on January 27, 1976 after advising petitioner's representative of the need for further substantiation of certain items and not receiving such substantiation. Revenue Agent Klebanoff had met with Mr. Brown, petitioner's representative, on July 22, 1975; August 21, 1975; October 6, 1975; November 14, 1975; and December 19, 1975. Prior to Revenue Agent Klebanoff's commencing his investigation of petitioner's income tax returns for its fiscal years 1972 and 1973, Mr. Giunta had been contacted by an agent of the Inspection Division of the Internal Revenue Service in connection with an investigation of Mr. Nardini. The Inspection Division agent was investigating an allegation that Mr. Nardini had falsely impersonated an officer or employee of the United States in violation of 18 U.S.C. sec. 912 (1948). On June 27, 1975, Mr. Nardini pleaded guilty to false impersonation of an officer *423 or employee of the United States and to aiding and abetting in violation of 18 U.S.C. secs. 912 and 2 (1948). Around July of 1975, Special Agent Neal Halbe was assigned to investigate Mr. Nardini's tax liability. In July 1975, he contacted Mr. Giunta's office, but Mr. Giunta was not there. In August or September 1975, Special Agent Halbe contacted Mr. Giunta and asked to see certain records of petitioner for the years when Mr. Nardini was petitioner's accountant. Mr. Giunta initially told Special Agent Halbe that he believed those records had been destroyed in a fire which occurred in petitioner's building in 1974 or in a theft which occurred in 1975, and therefore, he did not believe he could locate cancelled checks or other bank records relative to the years when Mr. Nardini was petitioner's accountant. On September 25, 1975, Special Agent Halbe issued a summons to Mr. Giunta requiring him to bring all cancelled checks of petitioner for the period January 1, 1971 through December 31, 1973 to the offices of the Intelligence Division, Internal Revenue Service, Philadelphia, Pennsylvania, on October 10, 1975. On October 3, 1975, Mr. Giunta brought to Special *424 Agent Halbe a bag containing monthly statements and cancelled checks of petitioner drawn on Industrial Valley Bank. After the issuance of the summons, Mr. Giunta made a diligent search for any checks of petitioner that might have escaped the fire and the bag contained all the checks and bank statements he had found. These checks were primarily for 1971 and 1972, but a few were for 1973. Special Agent Halbe kept the checks furnished to him for approximately 2 weeks and then returned them to Mr. Giunta. Special Agent Halbe requested petitioner to sign an affidavit with respect to amounts which he thought Mr. Nardini had taken from petitioner and the amounts of reimbursements by Mr. Nardini to petitioner. Special Agent Halbe wrote out the affidavit in his own handwriting and asked Mr. Giunta to read and sign it. This affidavit deals with certain checks given to petitioner by Mr. Nardini in September through December 1972 in repayment of amounts stated in the affidavit to have been taken from petitioner by Mr. Nardini. Although Revenue Agent Klebanoff met with petitioner's representative on October 6, 1975, while Special Agent Halbe had petitioner's checks which he had received *425 from Mr. Giunto, and again met with petitioner's representative on November 14, 1975 and December 19, 1975, he never discussed with Special Agent Halbe his investigation of petitioner's tax liability or what the checks which had been furnished to Special Agent Halbe by Mr. Giunta showed. During its fiscal year ending May 31, 1972, petitioner made the following aggregate payments by means of checks to the following individuals, corporations or entities: Payee
Amount
Bofinger & Kaplan
$10,685.00
Bulletin
431.25
Caiazza, Anthony
760.00
Clavner, Joeffry
265.00
Cole's Publications
188.66
Cohen, Sid
475.00
Dalton Corp.
65.72
De Paul, F.
1,500.00
Edoff, M.
7,004.00
Erase, Joe
235.00
Fellowship Council
50.00
Finio, J.F.
90.10
F. K. Wallace & Son
4,850.00
Focus
25.00
Giunta, Anthony
1,341.29
Inquirer
43.70
Italian American War Vets.
12.50
Janaskie, R.
1,837.00
Kennedy, Eugene
621.00
Laughlin, J.
450.00
Lotiergo & Sons
1,726.00
Milo Maintenance
215.00
Molino, Larry
80.00
Myers, S.
1,000.00
Petrone, Ralph
100.00
Philadelphia Newspaper Inc.
152.10
Philadelphia Tribune
11.60
Porrecco, F.
10,789.33
Ralph's SM
755.00
Rand, Lloyd
382.00
Sable, Ed
$ 2,467.46
Scoleri, Al
3,995.00
Sen. Credit & Collection
992.35
Smerechencki, Steven
1,000.00
Sons of Italy
75.00
Spataco, M.
10,571.26
Vauacore, August
500.00
Ward, Elmer Roger
2,340.32
Wilson, Art
2,086.20
*426 During June 1972, petitioner made the following aggregate payments by means of checks to the following individuals, corporations or entities: Payee
Amount
Bofinger & Kaplan
$ 1,063.00
Clavner, Joeffrey
100.00
Harris, J.
600.00
Porrecco, F.
428.68
Sable, Ed
600.00
Spataco, M.
689.67
The following is a list of petitioner's checks made payable to Enrico Nardini. Mr. Giunta did not sign these checks. Check
No.
Date
Amount
4494
5/10/72
$7,800
4490
7/2/72
2,500
4788
12/11/72
2,500
4731
12/12/72
3,000
On November 23, 1976, Mr. Nardini pleaded guilty to theft in state court. The amounts of the following checks of Quaker City Heating and Air Conditioning Co., Inc. listed above were for payments of advertising expenses in its fiscal year ending May 31, 1972: Payee
Amount
Bofinger & Kaplan
$10,685.00
Bulletin
431.25
Cole's Publications
188.66
Inquirer
43.70
Philadelphia Newspaper Inc.
152.10
Philadelphia Tribune
11.60
The following checks were in payment of commissions by petitioner in its fiscal year 1972: Payee
Amount
Caiazza, Anthony
$ 760.00
Clavner, Joeffry
265.00
Cohen, Sid
475.00
Edoff, M.
7,004.00
Erace, Joe
235.00
Giunta, Anthony
1,341.29
Janaskie, R.
1,837.00
Kennedy, Eugene
621.00
Laughlin, J.
450.00
Molino, Larry
80.00
Myers, S.
1,000.00
Petrone, Ralph
100.00
Rand, Lloyd
382.00
Sable, Ed
2,467.46
Scoleri, Al
3,995.00
Smerechencki, Steven
1,000.00
Vauacore, August
500.00
Ward, Elmer Roger
2,340.32
Wilson, Art
2,086.20
*427 Most of the rest of the checks herein above-listed were payments to subcontractors for installation of roofing, heating equipment, and similar items. Petitioner on its tax returns for its fiscal years ending May 31, 1972 and May 31, 1973, deducted commissions expenses of $30,687.90 and $27,946.16, respectively. On its returns for these respective years, it deducted advertising expenses of $19,864.05 and $12,233.01. After Revenue Agent Klebanoff had been unable to obtain any substantiation of the income and expenses shown on petitioner's income tax returns for its fiscal years 1972 and 1973 except the records furnished him on May 19, 1975, he increased petitioner's income for its fiscal year 1972 to the amounts shown on the books furnished to him. He disallowed part of the deductions claimed on petitioner's 1972 return for commissions and advertising expenses because of allowing deductions of these items as they appeared on the books and records of petitioner furnished to him by petitioner's representative. Since no books and records were furnished to Revenue Agent Klebanoff for petitioner's fiscal year 1973, he made no adjustment to petitioner's income as reported for that *428 year, but disallowed the same percentage of the deduction claimed for commissions and advertising expenses as had been disallowed for petitioner's fiscal year 1972. The notice of deficiency issued to petitioner was on the basis of Revenue Agent Klebanoff's report. In the notice of deficiency, the claimed deductions for commissions expenses were disallowed to the extent of $22,277 and $20,286, for petitioner's fiscal years 1972 and 1973, respectively, and the claimed deductions for advertising expenses were disallowed for these respective years in the amounts of $6,708 and $9,163. [2]
For petitioner's fiscal year 1972, gross receipts were increased by $3,550 and purchases decreased by $3,000. The explanation in the notice of deficiency for the disallowance of the commissions and advertising expenses was lack of substantiation. The explanation for the increase in gross receipts was that the amount of gross receipts shown in petitioner's cash receipts book *429 was greater than the amount reported on petitioner's return. The explanation for the disallowance of part of the purchases shown on the return was that it was determined that during the taxable year ending 5/31/72, the deduction for purchases is overstated by $3,000 based on unsubstantiated cash expenditures, as shown below: Check
12/9/71
$1,200
Check
12/16/71
1,800
Total
$3,000
ULTIMATE FACTS (1) Petitioner paid total commissions expenses during its fiscal year ending May 31, 1972 in the amount of $26,939.27 and is entitled to a deduction for commissions expenses in this amount. (2) Petitioner in its fiscal year ending May 31, 1972 paid advertising expenses of $11,512.31. (3) Petitioner has failed to show error in respondent's adjustment to purchases and sales in its fiscal year ending May 31, 1972, or error with respect to any adjustments made in the notice of deficiency with respect to its fiscal year 1973. (4) Petitioner has failed to show error in respondent's determination of an addition to tax under section 6653(a). OPINION The issues here are purely factual. Respondent argues that except for the amounts of advertising expenses *430 he has conceded to be deductible, his determination as set forth in the notice of deficiency should be sustained. Respondent contends that the testimony of Mr. Giunta, petitioner's president, that the payees on the checks stipulated by the parties to be drawn by petitioner were salesmen receiving commissions, is not credible. We disagree. Respondent argues that the lack of credibility of Mr. Giunta is shown by several documents which were found among petitioner's records that were obviously false documents. However, Mr. Giunta testified that he knew nothing about these documents or how they happened to be among petitioner's records. Certain of the documents were prepared at such a time that the logical inference to be drawn is that they were prepared by Mr. Nardini and put in petitioner's files to cover for funds that were being taken by Mr. Nardini. One document was apparently prepared in April 1975 when it is not clear whether petitioner's records had been transferred from Mr. Nardini to Mr. Brown. If they had not been transferred at that time, Mr. Nardini may well have prepared this document. In any event, clearly at the time the document was prepared the records were not *431 in Mr. Giunta's possession. Certainly Mr. Giunta could not have been attempting to conceal the existence of petitioner's checks since he had turned these checks over to a special agent of the Internal Revenue Service while the revenue agent was still investigating petitioner's tax liability for 1972 and 1973. Although Mr. Giunta was confused with respect to certain dates, we find his testimony with respect to the salesmen to whom checks were drawn for commissions paid to be credible and have accepted it. Other than the checks and testimony with respect to commissions expense and advertising expense, no evidence was introduced to show error in respondent's determination. Where a taxpayer can produce no books or records to substantiate deductions, respondent's disallowance of claimed deductions is proper. See Roberts v. Commissioner,62 T.C. 834, 836 (1974). Also, petitioner appears to have been negligent in not keeping more accurate books and records so that the addition to tax under section 6653(a) is proper. Petitioner has made no showing of error on the part of respondent in determining this addition to tax. We, therefore, sustain respondent's determination *432 except with respect to the commissions expense for 1972 which we hold to be substantiated and deductible for fiscal year 1972 in the amount of $26,939.27 and advertising expense of petitioner to the extent conceded by respondent. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years here involved, unless otherwise indicated.↩
2. The disallowance of advertising expenses for 1973 appears to be in excess of the percentage of disallowance for petitioner's fiscal year 1972. No explanation of this apparent inconsistency is contained in the record.↩